UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

ROYAL CARIBBEAN CRUISES LTD.,

    Plaintiff,

v.

CATCH ALL INVESTMENTS, LLC,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Royal Caribbean Cruises Ltd., by and through its undersigned counsel, brings this Complaint against defendant Catch All Investments, LLC and asserts as follows:

## THE PARTIES

1.    Plaintiff Royal Caribbean Cruises Ltd. ("RCCL") is a corporation organized and existing under the laws of the Republic of Liberia, with its principal place of business in Miami, Florida.

2.    Defendant Catch All Investments, LLC ("CAI") is a limited liability company organized and existing under the laws of the state of Florida with its principal address in Pompano Beach, Florida.

## JURISDICTION AND VENUE

3.    This is an action for cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d).

4.    This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

5. This Court has personal jurisdiction over the Defendant pursuant to Fla. Stat. § 48.193 in that the Defendant is doing business in the Southern District of Florida. More specifically, Defendant conducts business within this district, operates an office within this district, and the harm suffered by Plaintiff flows directly from the business conducted by Defendant within this district.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, as set forth more fully below, a substantial part of the events or omissions giving rise to RCCL's claims in this matter occurred in the Southern District of Florida.

## STATEMENT OF RELEVANT FACTS

**I.  *Factual Allegations Concerning the ROYAL CARIBBEAN Mark, its Widespread Use, Associated Goodwill, Famousness and Incontestability.***

1. With millions of guests annually, itineraries spanning all seven continents, over 1,000 ports of call, and the celebration of its 50th anniversary later this year, "Royal Caribbean" is a household name the world over.

2. RCCL controls and operates four global cruise brands: Royal Caribbean International, Celebrity Cruises, Azamara and, most recently, Silversea Cruises (collectively, the "Global Brands"). Petitioner also owns a 50% joint venture interest in the German brand TUI Cruises and a 49% interest in the Spanish brand Pullmantur (collectively, the "Partner Brands"). Together, Petitioner's Global Brands and the Partner Brands operate a combined total of 60 ships in the cruise vacation industry with an aggregate capacity of approximately 135,520 berths as of December 31, 2018.

3. RCCL owns and maintains hundreds of trademark applications and registrations in the United States Patent and Trademark Office, and worldwide. Of these, RCCL owns and maintains forty-two (42) trademark applications and registrations that include the term "ROYAL CARIBBEAN."

4. More specifically, in the United States, RCCL owns the registered mark ROYAL CARIBBEAN with Registration Number 1,397,148 (the "'148 Mark).

5. The '148 Mark was filed on October 11, 1985, in connection with Class 39 for "arranging and conducting cruises for others" and was first used in commerce on January 13, 1970.

6. The '148 Mark is currently valid, subsisting, in full force and effect, and is registered on the Principal Trademark Register of the USPTO.

7. The '148 Mark has attained incontestable status pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065. True and accurate records from the USPTO's TDR database reflecting the Certificates of Registration referenced above are attached as **Exhibit A.**

8. Additionally, under the Lanham Act and Florida common law, RCCL owns unregistered common law trademarks for ROYAL CARIBBEAN, ROYAL CARIBBEAN CRUISES, ROYAL CARIBBEAN INTERNATIONAL, and ROYAL CARIBBEAN CRUISE LINES. Hereinafter, all of the foregoing names and other marks owned, used, or registered by RCCL shall be referred to individually and collectively as the "ROYAL CARIBBEAN Marks."

9. The ROYAL CARIBBEAN Marks and variants thereof have been extensively and continually used, advertised, and promoted by RCCL within the United States and worldwide for the past forty-nine (49) years. Substantial time, effort, and money have been expended over the years in ensuring that the purchasing public associates such marks exclusively with RCCL. In the

last year alone, RCCL expended over $100 million in connection with its advertisement and promotion of products bearing the ROYAL CARIBBEAN Marks to establish these marks in the minds of customers as a source of high-quality cruise products.

10. As a result of RCCL's dedication to quality and its aggressive marketing, the goodwill associated with the ROYAL CARIBBEAN Marks has translated into billions of dollars in sales annually.

11. Because of RCCL's extensive advertisement and promotion of products bearing the ROYAL CARIBBEAN Marks and its billions of dollars of sales of ROYAL CARIBBEAN brand products, the ROYAL CARIBBEAN Marks have become famous among the relevant consuming public.

12. RCCL maintains a commercial website at the URL www.royalcaribbean.com. RCCL uses the ROYAL CARIBBEAN Marks to advertise and sell ROYAL CARIBBEAN brand products to consumers directly through its www.royalcaribbean.com website.

13. RCCL uses the ROYAL CARIBBEAN Marks elsewhere on the Internet to promote ROYAL CARIBBEAN brand products to consumers, which advertising directs consumers to the www.royalcaribbean.com website where consumers may purchase ROYAL CARIBBEAN brand Products.

    II.  *Factual Allegations Concerning Defendant's Unlawful Conduct*

14. Defendant is a cybersquatter, in the business of registering, using, and trafficking in domain names that are confusingly similar to famous or distinctive trademarks owned by others, including the ROYAL CARIBBEAN Marks.

15. Cybersquatters frequently register common misspellings or mistypings of trademarks with the intention to attract consumers who are attempting to reach the trademark owner's webpage (e.g., the misspelling of the "Ford" trademark - "FOORD", registered as "foord.com"). This type of cybersquatting is known as "typosquatting."

16. The typosquatted domain always includes a misspelling (i.e., a "typo"). When a user makes a typographical error as part of entering a URL on their web browser, the web browser leads the user to a website other than the site the user intended to visit – a website operated by the cybersquatter.

17. The aim of the cybersquatter is to register domain names consumers will visit so that advertisements can be displayed. When the advertisements are clicked by the unsuspecting consumer, the cybersquatters get paid. Sometimes, typosquatters create websites intended to steal a user's personal identifiable information, including credit cards or passwords. Typosquatters also routinely spread malicious software with the express purpose to steal a user's personal information. Universally, typosquatting is a for-profit activity, preying on the typographical mistakes of internet users and the goodwill associated with well-known marks.

18. Defendant is a typosquatter.

19. Beginning as early as 2003, without RCCL's consent, Defendant registered and began using the domain name "royalcaribbeam.com" thereby engaging in typosquatting. A true and correct copy of ICANN's WHOIS database reflecting Defendant's registration of the royalcaribbeam.com domain name is attached as **Exhibit B.**

20. Defendant's "royalcaribbeam.com" (hereinafter "Misspelled URL") is a misspelling of RCCL's URL "royalcaribbean.com."

5

21. The term "Royal Caribbeam" is a misspelling of RCCL's famous mark ROYAL CARIBBEAN.

22. The Misspelled URL is confusingly similar to the ROYAL CARIBBEAN Marks, including but not limited to the '148 Mark.

23. Upon information and belief, Defendant knowingly registered the URL containing the misspelled term "Royal Caribbeam" because the letter "M" is located next to the letter "N" in a standard QWERTY keyboard layout. In doing so, upon information and belief, Defendant sought to register a domain name with the maximum number of typographical errors possible, so as to drive increased traffic (and revenue) to Defendant's infringing URL and website.

24. Defendant's registered the Misspelled URL in violation of RCCL's trademark rights under the Lanham Act. On information and belief, Defendant began using the Misspelled URL in such a manner in order to drive Internet traffic to their website(s), causing initial consumer confusion and/or actual consumer confusion.

25. Defendant's website, in a bold and improper fashion, causes both initial consumer confusion and actual consumer confusion by redirecting consumers to RCCL competitors' websites.

26. Upon information and belief, at all relevant times to this complaint Defendant has redirected traffic from the Misspelled URL to the Norwegian Cruise Line website (located at http://www.ncl.com), and in doing so, Defendant has profited from the sale of RCCL competitor inventory, or has been paid by advertising revenues offered by RCCL competitor(s).

27. On information and belief, Defendant's unauthorized, prominent, and repeated use of a term that is confusingly similar to the ROYAL CARIBBEAN Marks - including in a domain

name, advertisements, and on their website - has confused and is likely to confuse customers into believing that Defendant's businesses, goods, and services are operated or sold by RCCL or with RCCL's approval.

28. Because of RCCL's long, extensive, and exclusive use and sale of its cruise products under the world-famous name and mark ROYAL CARIBBEAN, Defendant was, at all times, fully aware of RCCL trademark rights. Notwithstanding this notice, Defendant continue to use a term confusingly similar to the ROYAL CARIBBEAN Mark and in violation of RCCL rights wantonly, willfully, and in bad faith.

29. As a result of Defendant's actions, the relevant public will be confused, mistaken, and deceived into wrongfully attributing source, sponsorship, approval and/or authorization of Defendant's goods, services, and business operations by RCCL.

30. As a result of Defendant's unlawful conduct, false representations, unfair practices, and other tortious conduct, RCCL has suffered substantial damages.

31. On information and belief, Defendant is aware that its actions are likely to cause consumer confusion, including, but not limited to, initial consumer confusion.

32. Additionally, Defendant's actions as described above have and will continue to irreparably injure RCCL's goodwill, business reputation, and valuable intellectual property, including its trademarks.

## CAUSES OF ACTION

### COUNT I
### (Cybersquatting on Plaintiff's Marks Under 15 U.S.C. §1125(d))

33. RCCL repeats and realleges each and all of the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

34. Defendant registered and use the Misspelled URL.

35. The ROYAL CARIBBEAN Marks, including but not limited to the registered and incontestable '148 Mark, are distinctive and famous under the meaning of 15 U.S.C. §1125(c) and were distinctive and famous at the time Defendant registered and converted for their own use the domain name www.royalcaribbeam.com.

36. The Misspelled URL is confusingly similar to the ROYAL CARIBBEAN Marks and the '148 Mark.

37. Defendant, in bad faith and with a bad faith intent to profit, has registered and used a domain name (i.e., the Misspelled URL) that is identical or confusingly similar to the ROYAL CARIBBEAN Marks and has engaged in other acts designed to cause initial consumer confusion, evidencing a bad faith intent to profit from the registration, in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

38. The Misspelled URL does not consist of the legal name of the Defendant, nor a name that is otherwise commonly used to identify the Defendant.

39. Defendant has not made any prior use of the Misspelled URL in connection with the *bona fide* offering of any goods or services.

8

40. Defendant has not made any *bona fide* fair use of RCCL's trademarks on any website or part of a website accessible under the Misspelled URL.

41. Defendant registered and used the Misspelled URL to divert consumers from RCCL's websites to websites accessing under the Misspelled URL for Defendant's commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of these websites.

42. As a proximate result of the acts of Defendant, RCCL suffered and will continue to suffer lost profits, while Defendant are unjustly enriched at RCCL expense. Accordingly, pursuant to 15 U.S.C. § 1117(d), RCCL is entitled to its actual damages and/or statutory damages of up to $100,000.00 for each domain name that was wrongfully registered by Defendant.

43. As a proximate result of the bad faith acts of Defendant, RCCL suffered and will continue to suffer damage to its goodwill, reputation, and business model. RCCL has no adequate remedy at law for this damage. Unless Defendant are preliminarily and permanently enjoined, RCCL will continue to suffer irreparable harm. Accordingly, pursuant to 15 U.S.C. § 1125(d)(1)(c), RCCL is entitled to an Order transferring from Defendant and to RCCL the domain [www.royalcaribbeam.com](http://www.royalcaribbeam.com), and any other domain names containing the ROYAL CARIBBEAN Marks, or anything confusingly similar, in the domain names

44. This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. §1117.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, RCCL requests a trial by jury of any issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, RCCL seeks the following relief against Defendant:

1. That Defendant, its officers, agents, affiliates, servants, employees, and attorneys, those persons in active concert or participation with Defendant who receive actual notice of the court's order by personal service or otherwise, any other aliases or company names under which Defendant conducted or attempt to conduct business, and all persons, companies, and entities acting on behalf of Defendant be preliminarily and permanently enjoined from, directly or indirectly, continuing their actions in violation of the Lanham Act, including:

   a. using the ROYAL CARIBBEAN Marks or any other trade name, trademark, trade dress, service mark, domain name, designation, symbol, or device containing the ROYAL CARIBBEAN Marks, or any variant or any colorable imitations thereof;

   b. using the ROYAL CARIBBEAN Marks in keywords, metatags, or other source code for Defendant's various websites;

   c. promoting, offering for sale, or selling competing products using the ROYAL CARIBBEAN Marks through a retail store, via the internet, or through any other means or channels of trade now or hereafter developed;

   d. doing any act or thing calculated or likely to deceive members of the public or trade, or prospective purchasers, into believing that there is some affiliation, sponsorship, or connection between Defendant and RCCL or that Defendant's products and/or services are being created, developed,

manufactured, distributed, marketed, advertised, promoted, sponsored, offered for sale, or sold by RCCL or with RCCL's authorization, consent, approval, or permission;

2. that this Court require Defendant to immediately take all steps necessary to transfer and assign to RCCL any and all domain name registrations registered by or on behalf of Defendant that includes the term ROYAL CARIBBEAN or any terms identical or confusingly similar to the ROYAL CARIBBEAN Marks;

3. that Defendant, in accordance with 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon RCCL within thirty days after entry of the injunction a report in writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction;

4. that RCCL recover its actual damages sustained as a result of Defendant's wrongful actions;

5. that Defendant be required to account for and pay over to RCCL all gains, profits, and advantages realized as a result of Defendant's wrongful actions;

6. that RCCL recover three times Defendant's profits made as a result of Defendant's wrongful actions, or three times RCCL's damages, whichever is greater;

7. that as a result of Defendant's ongoing willful and egregious conduct this case be deemed an exceptional case under 15 U.S.C. §§ 1117(a) and that Defendant be deemed liable for and be ordered to reimburse RCCL for its reasonable attorneys' fees;

8. that RCCL be awarded the maximum statutory damages pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1117(d);

9.  that RCCL recover its costs of court; and

10. that RCCL be awarded such other relief as may be appropriate.

Dated:  July 11, 2019                               Respectfully submitted,

/s/ *Ernesto M. Rubi*
Ernesto M. Rubi
Florida Bar No. 92014
Ernesto M. Rubi
ROYAL CARIBBEAN CRUISES LTD.
1050 Caribbean Way, Suite 577
Miami, Florida 33132
Telephone:  (305) 420-7627
Facsimile:  (305) 539-6544
E-mail:  erubi@rccl.com

*Counsel for Plaintiff*
*Royal Caribbean Cruises Ltd.*